## ED GILL v. STATE.

No. A-3689.  Opinion Filed Sept. 29, 1921.
(200 Pac. 882.)

(Syllabus.)

**Intoxicating Liquors—Burden of Proof as to Intoxicating Nature of Liquor—Instructions.** On a trial for selling alleged malt liquor, commonly called "choc beer," where the evidence showed that the liquor or mixture alleged to have been sold was made out of bran and Karo syrup, and there was no evidence tending to show that the same was intoxicating, or that it contained as much as one-half of 1 per cent. of alcohol, measured by volume, or that it was such liquor as the courts judicially know to be malt and intoxicating liquor, it was error to instruct the jury that "The burden of proof is on the defendant to show that it was not intoxicating. And if from the evidence he shows that the liquor was not intoxicating, then he is entitled to an acquittal," and it was error for the court to refuse a requested instruction that, before the jury would be warranted in finding the defendant guilty, they must find from the evidence beyond a reasonable doubt that the mixture, which the state's witnesses called beer, was intoxicating.

Appeal from County Court, Bryan County; Lewis Paullin, Judge.

Ed Gill, convicted of violating the prohibitory liquor law, appeals.    Reversed.

Robert Crockett, for plaintiff in error.

The Attorney General and W. C. Hall, Asst. Atty. Gen., for the State.

DOYLE, P. J.   The plaintiff in error was tried, convicted, and sentenced to be confined in the county jail for 30 days, and pay a fine of $50, on an information which in effect charged that Ed Gill did in Bryan county, on or about the 15th day of March, 1919, unlawfully sell, give away, or otherwise furnish to one West Brannon one gallon of beer. To reverse the judgment, an appeal by case-made was perfected. On motion of the Attorney General, the judgment was affirmed for failure to file briefs. Upon a proper showing that briefs had been duly filed, a rehearing was granted, and the case submitted on briefs.

The errors assigned question the sufficiency of the evidence to sustain the verdict and the giving and refusing of certain instructions. The evidence for the state was substantially as follows:

"West Brannon testified that he lived in the town of Caddo, and at the date alleged was boarding with the defendant, Ed Gill, and was arrested for being drunk; that he had been drinking that day with Claude Nail and George James; that at the time of his arrest he had a little choc beer in a jug; that he got it from a stranger, and not from the defendant. Witness was then confronted with a statement purporting to be made by him after his arrest and while he was in jail at Durant, in which he accused the defendant of selling the beer to him. Witness admitted that he made such statement, but that it was under duress; that the arresting officer told him 'they would stick me if I would not try to stick some one else.'"

Coleman Robinson, deputy sheriff, testified that he arrested West Brannon, and that he had some choc beer, and was in company with Claude Nail and George James; that he went to the defendant's house and found a keg of choc beer, and arrested the defendant, who stated that he had let Brannon have some beer, but did not sell any; that the beer at the defendant's house looked like the beer West Brannon had.

Claude Nail testified that he was with West Brannon and George James, and a dollar was made up, and West Brannon went off, and in about 30 minutes returned with the beer in a jug; that he did not know who Brannon got the beer from.

The state rested, and the defendant asked the court to direct a verdict of acquittal, which was overruled. Upon reconvening of court after the noon recess, the state again called the witness West Brannon, who testified as follows:

"The testimony I gave this morning was all false, and I will have to admit I told a lie; the first statement I made while in jail was true, and I did get the beer from Ed Gill."

On cross-examination he stated that, during the recess, deputy sheriff Robinson told him they were liable to get him for perjury; that he might get 5 years in the penitentiary for swearing a lie; that he was in Mr. Crockett's office, and there made the false statement in writing; that he told Mr. Crockett the statement was the truth, because he did not want to do the defendant, who was a poor hard-working boy, any wrong.

As a witness in his own behalf, the defendant, Ed Gill, denied selling any beer to West Brannon, but admitted that he had tried to make a beer out of wheat bran and Karo syrup, and that he got as a result of the mixture only sour water; that he only made a gallon and a half; that it was not intoxicating, but was nauseating; that what little he drank made him sick; that at the time of his arrest one of the officers tasted the mixture, and said he could drink five gallons of it and it would not have any effect on him whatever.

Will Faulkner testified that in March, 1919, he was boarding with the defendant, and that on or about the 15th day of March, 1919, there was a mixture in the house that the defendant made out of bran and Karo syrup; that the result was only sour water, and was not intoxicating; that he was at the defendant's house nearly all day on the date alleged, and that West Brannon, after leaving the defendant's house that morning, did not return that day; that he saw Brannon when he left that morning, and he did not carry any with him —a jug, bottle, or anything else; that he was present when one of the officers tasted the mixture, and the officer said there was nothing to it; that the defendant's reputation for being a moral, law-abiding citizen was good.

Three or four other witnesses qualified, and testified that the defendant's character and reputation for being a moral, law-abiding citizen in that community was good. Instruction No. 2, as given by the court, reads:

"Gentlemen of the jury, the court instructs you as the law in this case that, if you find from the evidence that beer was sold or given, then the burden of proof is on the defendant to show that it was not intoxicating. If from the evidence he shows the liquor was not intoxicating, then he is entitled to an acquittal."

To this instruction objection was duly made and exception reserved. The defendant then asked the court to give an instruction to the effect that, before the jury would be warranted in finding the defendant guilty, they must believe from the evidence beyond a reasonable doubt that the mixture which the state witnesses called beer was intoxicating, and that the defendant sold the same to West Brannon; which instruction was refused, and exception allowed.

By the instruction objected to the jury were, in effect, told to find the defendant guilty unless he showed that the liquor was not intoxicating.

As a general rule, in criminal cases the burden of proof never shifts, but rests on the prosecution throughout, and before a conviction can be had the jury must be satisfied from the evidence beyond a reasonable doubt of the affirmative of the issue presented in the accusation; so in this case, where it was not such liquor as the courts judicially know to be malt and intoxicating liquor, if the state, upon the whole evidence, failed to prove that the so-called beer or liquor was intoxicating, or that it contained as much as one-half of 1 per cent. of alcohol, measured by volume, it fails to make out a case.

It follows that the instruction given was erroneous, and under the issues raised by the evidence in this case it was error to refuse the instruction requested. For the errors indicated, the judgment of the trial court is reversed.

MATSON and BESSEY, JJ., concur.